UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

_____

J.S., a child with a disability, individually
and by his parent and next friend, D.S.,

       **Plaintiffs,**

    v.            8:06-CV-159
                  (FJS/DRH)

CROWN POINT CENTRAL SCHOOL
DISTRICT,

       **Defendant.**
_____

**ATTORNEYS**            **OF COUNSEL**

**LAW OFFICE OF ANDREW K. CUDDY**   **JASON H. STERNE, ESQ.**
5888 Main Street
Williamsville, New York 14221
Attorneys for Plaintiffs

**THE LAW FIRM OF FRANK W. MILLER**   **CHARLES E. SYMONS, ESQ.**
6575 Kirkville Road
East Syracuse, New York 13057
Attorneys for Defendant

**SCULLIN, Senior Judge**

## MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

  Currently before the Court are Defendant's motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure and Plaintiffs' cross-motion for an Order granting attorney's fees.[1]

---

[1] Defendant requests that, if the Court denies its motion for summary judgment, the Court issue an Order determining the amount of attorney's fees that it owes to Plaintiffs.

## II. BACKGROUND

Plaintiffs commenced this action on February 7, 2006, seeking reimbursement of attorney's fees pursuant to the Individuals with Disabilities Education Act ("IDEA"). Defendant is a public school district and a local educational agency within the meaning of the IDEA. *See* 20 U.S.C. § 1415(i)(3). Plaintiff J.S. is a child with a disability within the meaning of the IDEA and Plaintiff D.S. is his parent.

Plaintiff D.S. initiated the underlying administrative proceeding by service of a Demand for a Due Process Hearing dated June 29, 2005. More than ten days prior to the commencement of the hearing, Defendant's counsel submitted a settlement offer to Plaintiff D.S., which she did not accept.

The Impartial Hearing Officer James Walsh ("IHO") held four days of hearings on August 24, 25, 26 and September 19, 2005. Before the hearing began, the IHO issued a letter-decision, in which he dismissed some of Plaintiffs' claims as time-barred. Following four days of hearings, the IHO issued a decision in which he concluded that (1) Plaintiff D.S. was not entitled to reimbursement for monies that she had paid to the Sylvan Learning Center for supplemental instructional services; (2) Plaintiff D.S. was not entitled to reimbursement for monies that she had paid to the Stern Center for Plaintiff J.S.'s evaluation in May 2004; and (3) the special education program that Defendant's Committee on Special Education ("CSE") recommended at its March 18, 2005 meeting and which was reflected in Plaintiff J.S.'s I.E.P for the 2005-2006 school year was totally insufficient to address Plaintiff J.S.'s special education needs. In light of his conclusion that Plaintiff J.S.'s I.E.P. did not meet his needs, the IHO determined that the I.E.P. must be annulled.

On November 15, 2005, after the IHO had issued his decision, Defendant received correspondence, including billing records, from Plaintiffs' counsel requesting attorney's fees in the amount of $59,825 based on Plaintiffs' claim that they were the prevailing party in the administrative proceeding. When the parties could not reach an agreement about the amount of attorney's fees, Plaintiffs commenced this action.

### III. DISCUSSION

The IDEA provides, in pertinent part, as follows:

> **(3) Jurisdiction of district courts; attorneys' fees**
>
> **(A) In general**
> The district courts of the United States shall have jurisdiction of actions brought under this section without regard to the amount in controversy.
>
> **(B) Award of attorneys' fees**
> **(i) In general**
> In any action or proceeding brought under this section, the court, in its discretion, may award reasonable attorneys' fees as part of the costs –
> **(I)** to a prevailing party who is the parent of a child with a disability; . . .
>
> **(C) Determination of amount of attorneys' fees**
> Fees awarded under this paragraph shall be based on rates prevailing in the community in which the action or proceeding arose for the kind and quality of services furnished. No bonus or multiplier may be used in calculating the fees awarded under this subsection.

**(D) Prohibition of attorneys' fees and related costs for certain services**
    **(i) In general**
    Attorneys' fees may not be awarded and related costs may not be reimbursed in any action or proceeding under this section for services performed subsequent to the time of a written offer of settlement to a parent if –
    **(I)** the offer is made within the time prescribed by Rule 68 of the Federal Rules of Civil Procedure or, in the case of an administrative proceeding, at any time more than 10 days before the proceeding begins;
    **(II)** the offer is not accepted within 10 days; and
    **(III)** the court or administrative hearing officer finds that the relief finally obtained by the parents is not more favorable to the parents than the offer of settlement.

\* \* \* \* \* \* \* \* \* \*

**(E) Exception to prohibition on attorneys' fees and related costs**
    Notwithstanding subparagraph (D), an award of attorneys' fees and related costs may be made to a parent who is the prevailing party and who was substantially justified in rejecting the settlement offer.

**(F) Reduction in amount of attorneys' fees**
    Except as provided in subparagraph (G), whenever the court finds that –
    **(i)** the parent, or the parent's attorney, during the course of the action or proceeding, unreasonably protracted the final resolution of the controversy;
    **(ii)** the amount of the attorneys' fees otherwise authorized to be awarded unreasonably exceeds the hourly rate prevailing in the community for similar services by attorneys of reasonably comparable skill, reputation, and experience;
    **(iii)** the time spent and legal services furnished were excessive considering the nature of

>	the action or proceeding; . . .
>	the court shall reduce, accordingly, the amount of
>	the attorneys' fees awarded under this section.
>
>	**(G) Exception to reduction in amount of attorneys' fees**
>		The provisions of subparagraph (F) shall not apply in any action or proceeding if the court finds that the . . . local educational agency unreasonably protracted the final resolution of the action or proceeding or there was a violation of this section.

20 U.S.C. § 1415(i)(3).

A.	**Preliminary issues**

Before the Court addresses the issue of the amount of the attorney's fees award to which Plaintiffs are entitled, if any, it first must resolve the following issues: (1) was Plaintiff D.S. a prevailing party in the underlying administrative proceeding; (2) if so, was the relief that Plaintiff D.S. finally obtained more favorable than Defendant's offer of settlement; (3) if not, was Plaintiff D.S. substantially justified in rejecting the settlement offer; and (4) did Defendant unreasonably protract the final resolution of the proceeding. The Court will discuss each of these issues in turn.

### *1. Was Plaintiff D.S. a prevailing party in the underlying administrative proceeding?*

Defendant does not deny that Plaintiff D.S. was a prevailing party in the underlying administrative proceeding. Rather, Defendant argues that she only prevailed on one of the three issues that the IHO decided and, therefore, the Court should limit the award of attorney's fees, if any, to the work that her attorneys expended on that claim.

After reviewing the record, the Court concludes that, although Plaintiff D.S. may have

prevailed on only one of the three issues that the IHO identified in his decision, she prevailed on the most important claim, i.e., the adequacy of her son's I.E.P. Moreover, the Court finds that the three issues are, to some extent, interrelated and that, in any event, the time that Plaintiffs' attorneys expended on the two issues on which Plaintiff D.S. did not prevail was minimal at best.

    *2.*    *Was the relief that Plaintiff D.S. ultimately obtained more favorable to her than Defendant's offer of settlement?*

Defendant's offer of settlement contained the following terms:

> 1. The IEP will be amended to provide for additional reading instruction from a certified reading teacher for thirty minutes three times per week. The instruction will be scientifically research-based work on decoding and encoding skills, in addition to that provided in the Resource Room, as well as on fluency training. . . .
>
> 2. The District will amend the IEP to provide additional writing instruction to address sentence and paragraph writing skills. This instruction will be provided two times per week at the same time period as the above-offered reading instruction, on the days alternate to the reading instruction. . . .
>
> 3. The District will agree to an independent neuropsychological evaluation at its expense.
>
> 4. The District will arrange for a speech language evaluation, an occupational therapy evaluation and an assistive technology evaluation.
>
> 5. The CSE will meet prior to the start of the 2005-06 school year to amend the IEP to reflect the more current psycho educational evaluation, to include goals to address written expression and reading fluency and to amend the existing reading and spelling goal and objectives. The CSE will also amend the IEP to specify that the consultant teacher is to provide services in English Language Arts. With appropriate input from the student and his parents, the CSE will amend the IEP to state the student's projected post-school outcomes, based on the student's needs, preferences, and interests,

>in the areas of employment, education, and community living and a statement of the needed transition services. The CSE will carefully consider input from the parent, including the results of the Stern Center evaluation. The CSE will re-convene upon completion of the neuropsychological and other evaluations to consider those reports.
>
>6. The District will reimburse the parent $785.00 for the Stern Center literacy evaluation.
>
>7. The District will pay $2,000 toward the parent's attorney's fee.

*See* Settlement Offer dated August 2, 2005, at 1-2.

In his decision, the IHO stated that it was his "determination and finding that the special education program recommended by the C.S.E. at its March 18, 2005 meeting and reflected in [Plaintiff J.S.'s] I.E.P. for the 2005-2006 school year . . . is totally insufficient in addressing [Plaintiff J.S.'s] special education needs. Such I.E.P. must be, as [sic] hereby is, ANNULLED." *See* IHO's Decision dated November 7, 2005, at 22. He explained further that he

>accept[ed] and adopt[ed] the determination made by the evaluator of the Stern Center that of primary importance to [Plaintiff J.S.'s] progress in the area of his deficiency is explicit, systematic instruction in decoding, preferably using a synthetic phonic program, such as Orton-Gillingham, Wilson or Project Read. In order to fulfill its obligations to [Plaintiff J.S.] to provide a free, appropriate public education the [Defendant's] Committee must reconvene and prepare a new I.E.P. that specifically incorporates one such methodology into [Plaintiff J.S.'s] special education program. If [Defendant] does not currently employ certified staff competent to provide such services to [Plaintiff J.S.], it must either retain new personnel competent to provide such or immediately take steps to have current personnel trained in such methodology. Further, in light of the inappropriate program provided to [Plaintiff J.S.] during the 2004-2005 school year, [Plaintiff J.S.] shall be provided with no less than one hour daily of such specialized training.

*See id.*

Having compared the terms of Defendant's proposed settlement to the IHO's decision, the Court concludes that Plaintiff D.S. obtained substantially more favorable relief than she would have received under the settlement: (1) in place of Defendant's offer to amend Plaintiff J.S.'s current I.E.P, the IHO annulled that I.E.P, thus, requiring Defendant to develop an entirely new IEP; (2) rather than the thirty-minutes per day of instruction that Defendant offered, the IHO required that Defendant provide Plaintiff J.S. with, at minimum, an hour of such instruction each day; and (3) in place of Defendant's offer to consider carefully the results of the Stern Center evaluation, the IHO ordered Defendant to implement one of the specific methodologies that the Stern Center evaluation recommended and either to hire new staff or to train existing staff to use such methodology.[2]

### *3. Did Defendant unreasonably protract the final resolution of the proceeding?*

There is some support in the record for Plaintiffs' argument that Defendant delayed the outcome of the underlying administrative proceedings. For example, the IHO found that there was evidence to support Plaintiffs' contention that they delivered a Notice Requesting a Due Process Hearing to Defendant in March 2005; and, therefore, he reconsidered his determination that, for statute-of-limitations purposes, events prior to June 2005 were time-barred. However, he gave Defendant the benefit of the doubt and concluded that Plaintiffs could have notified Defendant in March without any of Defendant's employees seeing that notice. Although the

---

[2] Since the Court has determined that the relief that Plaintiff D.S. ultimately obtained was more favorable than Defendant's settlement offer, it need not address the issue of whether she was substantially justified in rejecting Defendant's settlement offer.

-8-

Court is somewhat skeptical that Defendant did not receive or was not aware of the March notice, it will also give Defendant the benefit of the doubt because it does not have any definitive evidence to the contrary. Therefore, the Court concludes that Defendant did not unreasonably delay the outcome of the proceedings.

In sum, having concluded that there is no impediment to the Court exercising its discretion to award attorney's fees and costs to Plaintiffs, the Court concludes that such an award is justified in the amount discussed herein.

**B.     Attorney's fees and costs**

In *Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany*, 419 F. Supp. 2d 206 (N.D.N.Y. 2005), Judge Mordue adopted Magistrate Judge Homer's recommendation that the Court increase the lodestar rate structure in this District and concluded that Magistrate Judge Homer's proposed hourly rates were "both reasonable and comparable to rates in neighboring districts": "210 for experienced attorneys, $150 for associates with more than four years experience, $120 for less experienced attorneys, $80 for paralegals and the traditional one-half of these rates for time spent traveling . . . ." *Id.* at 211.

Shortly thereafter, in *Farbotko v. Clinton County of N.Y.*, 433 F.3d 204 (2d Cir. 2005), the Second Circuit provided additional guidelines for district courts to follow when determining a reasonable hourly rate for purposes of civil rights fee-shifting statutes. The court began its analysis by taking issue with the district court's sole reliance "on the rate structures applied in other Northern District cases . . . ." *Id.* at 208 (footnote omitted). The court noted that "a reasonable hourly rate is not itself a matter of binding precedent. Rather, under established

caselaw, a reasonable hourly rate is the 'prevailing market rate,' i.e., the rate 'prevailing in the [relevant] community for similar services by lawyers of reasonably comparable skill, experience, and reputation.'" *Id.* (quotation and other citation omitted). The court further stated that, therefore "'a reasonable hourly rate' is not ordinarily ascertained by reference to rates awarded in prior cases." *Id.* The court explained that "[r]ecycling rates awarded in prior cases without considering whether they continue to prevail may create disparity between compensation available under § 1988(b) and compensation available in the marketplace. This undermines § 1988(b)'s central purpose of attracting competent counsel to public interest litigation." *Id.* at 209. Thus, the court instructed the lower courts as follows:

> the equation in the caselaw of a "reasonable hourly fee" with the "prevailing market rate" contemplates a case-specific inquiry into the prevailing market rates for counsel of similar experience and skill to the fee applicant's counsel. This may, of course, include judicial notice of the rates awarded in prior cases and the court's own familiarity with the rates prevailing in the district. . . . But determination of the prevailing market rate in the relevant community also requires an evaluation of evidence proffered by the parties.
>
> \* \* \* \* \* \* \* \* \* \*
>
> To be sure, the fee applicant has the burden of showing by "satisfactory evidence – in addition to the attorney's own affidavits" – that the requested hourly rates are the prevailing market rates. . . .

*Id.* at 209-10 (internal quotations and citations omitted).

In this case, Plaintiffs ask the Court to award attorney's fees using the hourly rate of $250 for the work of the following attorneys: Andrew K. Cuddy, who was admitted to practice in 1996; Jason H. Sterne, who was admitted to practice in 1996; and H. Jeffrey Marcus, who was

admitted to practice in 1991. Plaintiffs also seek fees at the hourly rate of $125 for the work of the following paralegals: Diane Zambotti and Kyle M. Costello. To support these hourly rates, Plaintiffs contend that "[t]he neighboring Western District has routinely found rates in excess of $200 per hour to be reasonable for experienced attorneys with expertise in education law." *See* Plaintiffs' Memorandum of Law at 7 (citations omitted). In addition, Plaintiffs submitted the affidavits of two local attorneys who practice in the Buffalo area: Attorney Jay C. Pletcher, who has practiced in the Western District of New York since 1996 and who currently "charge[s] [$225.00 per hour] for parent representation in special education matters," *see* Affidavit of Jay C. Pletcher, sworn to September 12, 2006, at ¶ 8, and Attorney Bruce A. Goldstein, who has practiced in the Western District of New York since 1973 and who currently "charge[s] [$265.00 per hour] for parent representation in special education matters," *see* Affidavit of Bruce A. Goldstein, sworn to September 12, 2006, at ¶ 8. Applying these hourly rates, Plaintiffs request a total of $61,834.38 in attorneys fees and $2,115.94 in costs, for a total award of $63,950.32.[3]

Although Plaintiffs have submitted some evidence that rates in a neighboring district are somewhat higher than those in this District, the Court notes that Mr. Goldstein, who currently charges $265 per hour, has twenty years more experience than the attorneys in this case and Mr. Pletcher, whose years of experience are similar to those of Plaintiffs' attorneys, charges an hourly rate that is not significantly different than the $210 hourly rate that this District recently determined is reasonable for attorneys with similar years and types of experience. With respect

---

[3] In his affidavit, Attorney Sterne indicates that Plaintiffs "intend[] to update the Court as to the time [that their attorneys] expended on this motion, [which they expect] will amount to total 15-20 hours." *See* Affidavit of Jason H. Sterne, sworn to January 9, 2007 ("Sterne Aff."), at ¶ 29.

to the work of their attorneys' paralegals, Plaintiffs did not submit any evidence to support a finding that the District's $80 per hour rate is unreasonable or that their proposed rate of $125 per hour is reasonable. Therefore, the Court will apply the following hourly rates to the work that Plaintiffs' attorneys expended in this matter: $210 per hour for the work of Attorneys Cuddy, Marcus and Sterne, $80 per hour for the work of Ms. Zambotti and Mr. Costello, and one-half of those rates for travel time.

The Court has reviewed Plaintiffs' submissions and finds that Plaintiffs' attorneys and their paralegals expended the following time working on the underlying administrative proceeding:

| Name | Work Hours | Travel Hours |
| --- | --- | --- |
| Andrew Cuddy, Esq. | 112.90 | 24.20 |
| Jeffrey Marcus, Esq. | 18.60 | 0 |
| Jason Sterne, Esq. | 59.60 | 0 |
| Diane Zambotti | 16.80 | 0 |
| Kyle Costello[4] | 0 | 0 |
| **Total Hours for Attorneys** | **191.10** | **24.20** |
| **Total Hours for Paralegals** | **16.80** | **0** |

In addition, the Court has reviewed Plaintiffs' submissions and finds that Plaintiffs' attorneys have expended the following time working on matters related to this federal lawsuit:

---

[4] In his affidavit, Mr. Sterne states that "[t]he parent also submitted (in discovery) 23.2 hours from Mr. Costello for attending an ordered CSE meeting on November 30, 2005. Of this time, 14.25 hours are for travel, for a total of $2009.38." *See* Sterne Aff. at ¶ 28. Although the Court has combed through Plaintiffs' submissions several times, it has been unable to find any contemporaneous time records to support these hours.

| Name | Work Hours | Travel Hours |
|---|---|---|
| Andrew Cuddy | 5.8 | 0 |
| Jason Sterne | 29.8 | 0 |
| **Total Hours for Attorneys** | **35.6** | |

Finally, Plaintiffs seek costs in the amount of **$2,115.94**, which includes this Court's $350 civil case filing fee, copies ($.50 each), postage, mileage ($.50 per mile) and "overnight"[5] ($150 for each night).

Applying the hourly rates of $210 for the work of Mr. Cuddy, Mr. Sterne and Mr. Marcus and $80 for the work of Ms. Zambotti, the Court calculates the attorney's fees award as follows:

| | |
|---|---|
| Attorneys' work hours | 226.7 hours (191.10 at the administrative level and 35.6 in this lawsuit) times the hourly rate of $210 equals **$47,607.00** |
| Attorneys' travel hours | 24.2 hours times the hourly rate of $105 equals **$2,541.00** |
| Paralegals' work hours | 16.8 hours times the hourly rate of $80 equals **$1,344.00** |
| **Total** | **$51,492.00** |

The Court also awards Plaintiffs the full amount of the costs they seek: **$2,115.94**.[6] Therefore, the Court grants Plaintiffs' motion for an award of attorney's fees and costs in the amount of **$53,607.94**. In addition, the Court will permit Plaintiffs to submit contemporaneous time records to support their request for attorney's fees for the work that their counsel expended

---

[5] The Court assumes that by "overnight" Plaintiffs mean hotel expenses.

[6] Although Defendant argues that the $.50 per copy charge and the $2.00 per fax charge are excessive, the Court finds that they are reasonable.

in preparing this cross-motion and in opposing Defendant's motion. The Court will also allow Defendant to submit papers in opposition to that request if it wishes to do so.

### IV. CONCLUSION

After reviewing the entire file in this matter, as well as the applicable law, and for the reasons stated herein, the Court hereby

**ORDERS** that Defendant's motion for summary judgment dismissing this case is **DENIED**; and the Court further

**ORDERS** that Plaintiffs' cross-motion for an award of attorney's fees and costs is **GRANTED** in the amount of **$53,607.94**; and the Court further

**ORDERS** that, on or before **February 20, 2007**, Plaintiffs shall file with the Court and serve on opposing counsel the necessary documentation, including contemporaneous time records, to support their request for an award of attorney's fees for the work that their attorneys and paralegals expended preparing the current cross-motion and responding to Defendant's motion; and the Court further

**ORDERS** that, on or before **March 2, 2007**, Defendant shall file with the Court and serve on opposing counsel its papers, if any, in opposition to Plaintiffs' request.

**IT IS SO ORDERED.**

Dated: February 9, 2007
      Syracuse, New York

                                      Frederick J. Scullin, Jr.
                                      Senior United States District Court Judge